Jennie Artushenia, complainant-respondent,

*v.*

Gregory Artushenia, defendant, and John V. Laddey, defendant-appellant.

[Submitted October 27th, 1933. Decided January 5th, 1934.]

Mr. *John V. Laddey, pro se,* for the appellant.

Mr. *Elias A. Cohen,* for the respondent.

The opinion of the court was delivered by

Donges, J.

This is an appeal from a final decree of the court of chancery advised by Vice-Chancellor Stein adjudging that a trust be impressed in favor of complainant-respondent upon $1,000 in the hands of the appellant, John V. Laddey, and that Laddey pay said sum of $1,000, together with interest at six per cent. from April 9th, 1932, a counsel fee of $50 and costs, to the respondent. Mr. Laddey has paid the sum of $1,200 into the hands of the clerk in chancery, where it is being held pending outcome of this appeal.

The complainant-respondent, when a girl of fourteen years, was seduced under promise of marriage by a married man and bore an illegitimate child. Mr. Laddey was retained to look after her interests and from that time on took an interest in her welfare. Suit was brought against her seducer, result-

ing in the recovery of the sum of $9,500, which estate was the source of the $1,000 involved in this suit.

Subsequently Laddey rendered services in connection with an investigation of the history and character of complainant's present husband, at a time when she wished to marry him but her family objected to such marriage.

About December 1st, 1931, Mrs. Artushenia began· attending night school. She became involved in an affair with one Tony Galah, who was also attending the school. The husband consulted Mr. Laddey as to the course to pursue to induce the complainant to alter her course of conduct. Things progressed in such a way that the complainant's conduct with Galah became worse than before. On January 14th, 1932, Mr. Artushenia met his wife and her paramour on the street and a fight occurred in which Artushenia inflicted a serious knife wound on Galah's neck. Artushenia was arrested. Two days later, on Saturday, January 16th, 1932, Mrs. Artushenia consulted Laddey and asked him to get her husband out of jail on bail. They went to the bank and the wife drew out $1,000 in cash which was put up as bail and the husband's release was obtained.

Two or three days later Mr. Laddey was paid a fee of $250, a part of which Mrs. Artushenia admittedly paid, and Mr. Laddey says it was at that time agreed by Mrs. Artushenia that any further fees and expenses of the case would be paid out of the bail money when it was returnable to her.

Complainant continued her misconduct with Galah and upon one occasion another fight occurred in which Artushenia was beaten. He had Galah arrested and Mrs. Artushenia put up $1,000 as bail for Galah. Mrs. Artushenia finally ran away with Galah.

Early in April, Artushenia, having been indicted, pleaded *non vult* and was placed on probation; this as the result of Laddey's efforts. Laddey says he desired to charge a fee of $600 for his services and that he was told by Judge Brennan that this was reasonable and that it was proper to take it out of the bail money, which was returned by the clerk on April 9th, 1932. On Artushenia's instructions, the money was re-

turned by check drawn to him and delivered to Laddey. Artushenia endorsed the check and turned it over to Laddey. With his consent, Laddey deducted $350, the balance of his $600 fee, $250 having been paid, from the $1,000, leaving a balance of $650. He was instructed by Artushenia to hold this $650 in trust for Mrs. Artushenia, the husband stating that if Mrs. Artushenia got possession of the money she might give it to Galah or spend it on him. It thus appears at this point that Laddey recognized the interest of Mrs. Artushenia in the money. Defendant-appellant rendered further services, to wit, institution of a suit on *capias* on behalf of the husband against Galah. For this he was instructed by Artushenia to deduct $250 from the $650 trust fund as a retainer. This reduced the fund to $400, according to Laddey's calculations, which sum he tendered in his answer. Galah sued Artushenia on *capias* and Laddey rendered services in this connection.

Finally Galah got his hands on some of complainant's money and fled to Europe. Subsequently Mr. and Mrs. Artushenia became reconciled and are now living together. Mr. Laddey now occupies an unenviable position, with both husband and wife endeavoring to get back the $1,000 *in toto*.

The first point is that the bill should have been dismissed because the complainant did not come into equity with clean hands. This doctrine does not apply to an action of this kind. The improper conduct which will work an estoppel in equity must be in connection with the transaction in which relief is sought. Mrs. Artushenia's improper conduct with Galah has not changed or affected the position of Laddey, so far as the fund in dispute is concerned.

It is next urged that an equitable estoppel is worked because of the improper conduct of complainant. Her conduct has nothing to do with the relief sought against Laddey, nor has it in any way harmed him.

The appellant urges that the vice-chancellor erred in excluding certain testimony taken before a supreme court commissioner, offered to exhibit "the nature and extent of the conduct of the complainant," and to show "that the husband was under a duty to protect his family and his wife against her own follies." Undoubtedly a husband is under a moral

and legal duty to exercise vigilance in the protection of his wife, to guard her against any tendency to marital incontinence. But this appears to be a duty of the husband, and neither reason nor authority has been submitted that such duty is to be performed by the husband at the financial expense of the wife. The testimony was not competent or material to the issue.

It is likewise urged that the vice-chancellor erred in excluding certain testimony of one Uglay as to statements of Gregory Artushenia, on the ground that the testimony was not rebuttal. It obviously was not in contradiction of the defendant Artushenia's testimony, for he was not asked whether he wanted his wife to get the money back; nor was it proper to bind the complainant, because it was not alleged to have been said by her, nor in her presence, nor by anyone authorized to speak for her. Hence, it was properly excluded.

The other points have to do with the decision on the merits. Appellant seems to have two theories upon which he thinks he should prevail. First, that there was a loan or gift of the money by the wife to the husband. But appellant did not act upon this theory when he accepted the money and deposited $650 of it in trust for the wife because the husband feared Galah would get it. Laddey thereby recognized the interest of Mrs. Artushenia in the fund, which he also knew came from her estate. Nor was there any evidence that the wife lent the money to her husband.

The other idea is that because the conduct of the wife was so reprehensible, the services rendered to restrain her improper actions, at the request of the husband, were really services rendered in her behalf for which she should pay. This has been dealt with above. Neither of these theories supports appellant's claim.

The decree will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—None.